United States District Court
Southern District of Texas
**ENTERED**
June 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CALEB AARON CHAPMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00117 |
| | § | |
| MERCEDITA FLYNN FNP-C, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DENY THE PARTIES' DISPOSITIVE MOTIONS

Plaintiff Caleb Aaron Chapman, formerly confined as a pretrial detainee at the Bee County Jail in Beeville, Texas, is proceeding *pro se* and *in forma pauperis* in this prisoner civil rights action filed under 42 U.S.C. § 1983. Pending before the Court are: (1) a Motion to Dismiss (D.E. 27) filed by Family Nurse Practitioner Mercedita Flynn ("FNP Flynn") and Nurse Joy Castillo[1] ("Nurse Castillo"); and (2) Plaintiff's Motion for Summary Judgment (D.E. 29). The undersigned has construed FNP Flynn's and Nurse Castillo's Motion to Dismiss as a Motion For Summary Judgment and has given the parties an opportunity to present materials pertinent to the motion in accordance with Rule 12(d) of the Federal Rules of Civil Procedure. (D.E. 37).

For the reasons set forth below, the undersigned respectfully recommends that the Court deny the parties' respective dispositive motions.

---

[1] Plaintiff named "Nurse Joyce" as a defendant in his pleadings. (D.E.'s 1 and 14). This defendant has subsequently been identified as "Joy Castillo." (D.E.'s 22 & 23).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

Plaintiff's allegations in this action arise in connection with his confinement as a pretrial detainee at the Bee County Jail.  In his original complaint, Plaintiff sued: (1) the Bee County Jail Medical Provider; (2) Nurse Castillo; and (3) the Bee County Jail. (D.E. 1, pp. 1, 3). Plaintiff claimed that these defendants discriminated against him by denying him access to certain medications. Plaintiff sought relief simply in the form of "help." (*Id.* at 4).

At the Court's direction, Plaintiff filed an amended complaint, in which he sues the following defendants in their individual and official capacities: (1) FNP Flynn; (2) Nurse Castillo; (3) Captain Freddie Bullock (Bullock); and (4) Sheriff Anson Southmade (Southmade). (D.E. 14, pp. 1, 3).  In addition to his discrimination claim, Plaintiff further claims that FNP Flynn and Nurse Castillo acted with deliberate indifference to his serious medical needs and that Bullock and Southmade failed to resolve Plaintiff's grievance in his favor. (Id. at 3-4, 6-7).  Plaintiff seeks monetary and unspecified injunctive relief. (Id. at 4).

On August 23, 2022, the undersigned issued a Memorandum and Recommendation (M&R), recommending that the Court:

- retain Plaintiff's Eighth Amendment claims seeking monetary relief against FNP Flynn and Nurse Castillo in their individual capacities;

- dismiss without prejudice Defendants Bee County Jail Medical Provider and Bee County Jail from this action;

- dismiss with prejudice Plaintiff's claims against Defendants in their official capacities;

- dismiss with prejudice as moot Plaintiff's claims seeking injunctive relief against Defendants; and

- dismiss with prejudice Plaintiff's remaining claims against the remaining Defendants as frivolous and/or for failure to state a claim.

(D.E. 16).  On September 27, 2022, District Judge Nelva Gonzales Ramos adopted the M&R in its entirety.  (D.E. 19).

On December 5, 2022, FNP Flynn and Nurse Castillo (collectively referred to hereinafter as "Defendants") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  (D.E. 27).  Defendants seek dismissal because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  (*Id.* at 5-9).  In support of their motion, Defendants submitted various evidentiary materials that were outside the pleadings.  (D.E. 27-1 through 27-4).  On December 19, 2022, the Court received Plaintiff's Motion for Summary Judgment.  (D.E. 29).

In his amended complaint, Plaintiff indicated that he had exhausted all of his administrative remedies with respect to his Eighth Amendment claims. (D.E. 14, p. 3). While including no exhibits in his initial responses to Defendants' Motion to Dismiss, Plaintiff contends that: (1) the administrative grievance process at the Bee County Jail was

rendered unavailable to him; (2) the Bee County Jail failed to provide responses to Plaintiff's written grievances submitted on May 9, 2022, June 16, 2022, July 12, 2022, and July 14, 2022; and (3) he attempted to submit other related grievances through an electronic system.  (D.E. 32, p. 2; D.E. 34, p. 2).

By Order entered on February 23, 2023, the undersigned first explained that Defendants' Rule 12(b)(1) motion was properly addressed as a Rule 12(b)(6) motion because the exhaustion requirement under § 1997e(a) is non-jurisdictional.  (D.E. 37, pp. 2-3).  The undersigned then notified the parties of the Court's intention, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, to treat Defendants' Motion to Dismiss as one for summary judgment under Federal Rule of Civil Procedure 56. (*Id.* at 3).  The parties, therefore, were given an opportunity to submit any additional evidence they believe was appropriate with regard to the exhaustion issue.  (*Id.* at 4-5).

In response to the February 23 Order, Plaintiff and Defendants submitted additional evidence on the issue of exhaustion.  (D.E.'s 38 & 39-1 through 39-6).  Along with their exhibits, Defendants also submitted an additional brief-response.  (D.E. 39).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere

allegations of the pleadings.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

## IV.   DISCUSSION

### A.   Exhaustion

#### (1)   *Exhaustion Requirements*

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through

the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

When an institutional grievance procedure provides for two steps, a grievance and an appeal, the Fifth Circuit has found that both steps must be completed in order to file suit in federal court. *Johnson v. Johnson*, 385 F.3d 503, 515-516 (5th Cir. 2004) ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 517 (citations omitted). A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.*

It is well settled that exhaustion is only required with respect to administrative remedies that are available. *Wheater v. Shaw*, 719 Fed. App'x 367, 369 (5th Cir. 2018) (citing *Ross v. Blake*, 578 U.S. 632, 635 (2016)). "To determine what remedies are 'available' and thus must be exhausted, [courts] look to 'the applicable procedural rules ... defined ... by the prison grievance process itself.'" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (quoting *Jones*, 549 U.S. at 299).

Therefore, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. *See also Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted."). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738).

An administrative remedy is considered unavailable in situations where "officials are 'unable or consistently unwilling to provide any relief,' the administrative scheme is "'so opaque that it becomes, practically speaking, incapable of use' by the ordinary prisoner,'" or "'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Wheater*, 719 F. App'x at 369 (quoting *Ross*, 578 U.S.  at 643-44). *See also Dillon*, 596 F.3d at 268 (noting that "our strict approach does not absolutely foreclose the possibility that prison officials' statements concerning administrative remedies can render such remedies unavailable").

Because exhaustion is an affirmative defense, the burden is on Defendants as the moving party to demonstrate that Plaintiff failed to exhaust administrative remedies. *Dillon*, 596 F.3d at 266 (citing *Jones*, 549 U.S. at 216).  Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor."  *Id.*  In the Fifth Circuit, trial judges should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits.  *Id.* at 270-72.

### (2)   *The Bee County Jail Exhaustion Procedures*

The Bee County Jail inmate handbook contains the procedure for inmates to raise grievances.  (D.E. 39-4).  The grievance procedures set forth in the inmate handbook, which are undisputed, are as follows:

> **INMATE GRIEVANCE PROCESS**
> Grievance – a wrong, considered as grounds believed to cause distress/resentment as against an unjust or unfair act; abuse, harassment, abridgment of civil rights or denied privileges without just cause.
> In order to file a grievance: you must send a written statement directly to the jail Sgt/Lt/Commander in a sealed envelope stating the time, date, names of persons or staff members involved as well as all important details of the incident including names of witnesses.  All grievances will be promptly and thoroughly investigated. Action will be taken, and a reply issued to the inmate.  You have the right to appeal the decision to the inmates' grievance board.  Appeals must be submitted in writing to the jail administrator.  The final appeal will be given to the Sheriff, that decision will be final.

(*Id.* at 7).

Grievance procedures are further set forth in more detail in the Bee County Grievance Plan, Chapter 283.3. (D.E. 39-2). These procedures, which are also undisputed, provide as follows:

1. Inmates are to be informed of the availability of the grievance procedure in the Inmate Rules and Regulations provided to each inmate when admitted to the facility.

2. Staff members are encouraged to resolve informal grievance complaints thereby eliminating the need for the filing of a formal grievance complaint.

3. The Grievance Board will be made up of the following, none of whom shall be directly involved:

   a. Jail Administrator

   b. One Jailor

   c. One County employee

4. Only the following constitute grounds for initiation of a grievance:

   a. Violation of civil rights

   b. Criminal Act

   c. Unjust denial or restriction of inmate privileges

   d. Prohibited act by facility staff

5. The Grievance Officer will be the Jail Administrator or his designee in his absence.

6. All grievances must be investigated, and a written reply sent by the Grievance Board within 15 days[.]

7. Upon receipt of the grievance, the Grievance Officer will review the grievance to determine:

   a. If the grievance is an emergency (where delay could subject the inmate to personal injuries or other damage).

   b. If the grievance constitutes a prohibited act by a staff member.

   c. If the grievance is a civil rights violation or a criminal act.

   d. If the grievance is an unjust denial or restriction of the inmate's privileges.

8.  Emergency grievances where delay could subject the inmate to personal injury shall be handled expeditiously by the Grievance Board.

9.  The Grievance Board shall consider the potential and provide safeguards for the inmate against reprisals in the resolution of the grievance.

10. Upon determining the category of the grievance other than emergency, the Grievance Officer will investigate fully the allegations. Appropriate actions to address the grievance will be taken.

11. A written response from the Grievance Board shall be submitted to the inmate, to include findings and actions taken by the Grievance Board as soon as possible, but not to exceed fifteen (15) days.

12. The Grievance Board shall provide for meaningful relief of a substantial grievance (i.e., reinstatement of goodtime, additional visitation privileges, etc.)[.]

13. A staff member who subjects an inmate to harassment, curtailment of privileges, or any type of punishment because of a grievance report, or attempts to interfere with reporting of a grievance, shall be subject to immediate dismissal from employment.

14. An inmate may appeal a decision by the Grievance Board to the Sheriff, whose decision is final.

15. Grievance information regarding inmates and employees will be kept strictly confidential.  In no case will information be released without the specific approval of the Sheriff or his designee.

(*Id.*).

### (3)   *Defendants' Summary Judgment Evidence*

Defendants have submitted the following evidence in support of their motion:

1. Affidavit of Ryan Garcia (D.E. 27-1);

2. The Bee County Jail Inmate Handbook (D.E's. 27-2 & 39-4);

3. Plaintiff's Inmate Grievance Form dated May 9, 2022 (D.E.'s 27-3 & 39-5);

4. Letter of Capt. Freddie Bullock to Texas Commission on Jail Standards (D.E.'s 27-4 & 39-6);

5. Affidavit of Capt. Bullock (D.E. 39-1);

6. Bee County Grievance Plan – Chapter 283.3 (D.E. 39-2);

7. Acknowledgement by Plaintiff he received a copy of the Bee County Jail Inmate Handbook on May 4, 2022 (D.E. 39-3);

Capt. Bullock, the Jail Administrator/Grievance Officer at all relevant times, was involved in the grievance process and was familiar with any grievances filed by Plaintiff. (D.E. 39-1, p. 1).  Capt. Bullock states that Plaintiff became an inmate of the Bee County Jail on May 3, 2022.  (*Id.*).  On May 4, 2022, it is undisputed that Plaintiff signed a statement acknowledging that he had been provided a copy of the rules and policies contained in the Bee County Jail Inmate Handbook.  (*Id.* at 2; D.E. 39-3).

Ryan Garcia, the Director of Healthcare for Coastal Bend Urgent Care, LLC ("CBUC"),[2] states in his affidavit that Plaintiff filed a formal grievance under the Bee County Jail Inmate Handbook only with respect to his medical care in May 2022.  (D.E.

---

[2] Director Garcia avers that Bee County entered into a Jail Medical Services Contract with CBUC beginning in October 1, 2016 and that the contract remains in effect.  (D.E. 27-1, p. 1).

27-1, p. 3).  The grievance referenced by Director Garcia is dated May 9, 2022.  (*Id.*).  In

Plaintiff's May 9 grievance, Plaintiff complained that jail and medical officials did not

provide him with Naltrexone, which is used to treat opioid addition, following his transfer

to the Bee County Jail.  (D.E. 39-5, p. 2).  Plaintiff complained that he was a victim of

discrimination because jail officials had provided another inmate with the medication

Sybovin, a known opiate and narcotic.  (*Id.*).  Director Garcia states that Plaintiff never

formally submitted a grievance complaint pertaining to his medical care received from July

2022 onward.[3]  (D.E. 27-1, p. 3).

On his May 9, 2022 Inmate Grievance Form, Plaintiff directed his complaint to the

Texas Commission on Jail Standards.  (D.E. 39-1, p. 3; D.E. 39-5, p. 2).  Capt. Bullock

states that:

> My review of [Plaintiff's] Grievance File confirmed that instead of
> submitting the required Inmate Grievance Form to a jail sergeant, lieutenant,
> or commander (i.e., captain) of the [Bee County Jail] so that his complaints
> could be investigated by the Grievance Board, instead [Plaintiff] had his
> grievance sent directly to the Texas Commission on Jail Standards.  The
> Texas Commission on Jail Standards is not part of the Grievance Board as
> confirmed by the Grievance Plan, nor is it part of the Inmate Grievance
> Process as confirmed by the Handbook.

(D.E. 39-1, p. 3).  Accordingly, Capt. Bullock avers that Plaintiff failed "to initiate or

follow the inmate Grievance Process that he was informed of upon admission and that was

available to him through his admission."  (*Id.*).

---

[3] According to Director Garcia, Plaintiff was housed at the Bee County Jail from May 3, 2022 through August 15, 2022, the date of his transfer to TDCJ's Substance Abuse Felony Punishment Facility Program.  (D.E. 27-1, p. 3).

As confirmed by Capt. Bullock's letter to Ben Ablon ("Ablon"), the Inspector for the Texas Commission on Jail Standards, Plaintiff's May 9, 2022 grievance was forwarded to the Texas Commission on Jail Standards. (D.E. 39-6, p. 2). Capt. Bullock explained in the letter to Ablon that: (1) Plaintiff had been transported to the Bee County Jail with the directive that he would receive "Naltrexone 50 mg-Detox protocol until 5/4"; and (2) upon evaluation by the Bee County medical staff on May 9, 2022, Plaintiff's medication was restarted at that time. (D.E. 39-6). Thus, by the time Capt. Bullock was aware of Plaintiff's grievance on May 13, 2022, Plaintiff's medication had already been restarted. (D.E. 39-1, p. 4).

Capt. Bullock further states that inmates at the Bee County Jail have the option of submitting "grievances electronically using a CTC kiosk located in the inmate's own cell." (D.E. 39-1, p. 3). According to Capt. Bullock, Plaintiff's records confirm that he did not submit any grievances electronically. (*Id.*)

### *(4)    Plaintiff's Summary Judgment Evidence*

Plaintiff has submitted the following evidence:

1.  Plaintiff's verified Amended Complaint (D.E. 14);

2.  Plaintiff's Appeal to the sheriff dated June 12, 2022 (D.E. 38, p. 4);

3.  Plaintiff's Letter Grievance dated July 12, 2022 (D.E. 38, p. 5);

4.  Plaintiff's Second Letter Grievance dated July 12, 2022 (D.E. 38, p. 6);

5.  Plaintiff's Letter Grievance to the sheriff dated June 15, 2022 (D.E. 38, p. 7);

6.  Plaintiff's Appeal to the sheriff dated June 16, 2022 (D.E. 38, p. 8);

7.  Plaintiff's Letter Grievance dated July 14, 2022 (D.E. 38, p. 9);

8.  Plaintiff's Appeal to the sheriff dated July 17, 2022 (D.E. 38, p. 10);

9.  Plaintiff's Notes (D.E. 38, pp. 11-14);

10. Plaintiff's Letter to Complaint Inspector dated June 28, 2022 (D.E. 38, p. 15);

11. Plaintiff's Email dated June 8, 2022, from Laura Solomon on behalf of Dr. Julia Aharanov (D.E. 38, p. 16).

In Plaintiff's Amended Complaint form, he checks "YES" indicating he exhausted all steps of the institutional grievance procedure.  (D.E. 14, p. 3).  Plaintiff has submitted an Inmate Grievance form dated June 12, 2022, in which he sought to appeal to the sheriff with regard to his May 9, 2022 grievance.  (D.E. 38, p. 4).  Plaintiff complained that he did not receive a response to this appeal grievance in which he claimed he was the victim of discrimination regarding the denial of his medication.  (*Id.*).

In a letter grievance submitted to the sheriff dated June 15, 2022, Plaintiff complained about Capt. Bullock's inquiry regarding a prior grievance Plaintiff had sent to the sheriff.  (D.E. 38, p. 7).  Plaintiff indicated that he did not receive a response to this grievance.  (*Id.*).

Plaintiff has submitted an Inmate Grievance form dated June 16, 2022, in which he sought to appeal to the sheriff about receiving no responses to his many grievances.  (D.E. 38, p. 8).  Plaintiff stated that Capt. Bullock was hiding these grievances from the sheriff. (*Id.*).  Plaintiff indicated that he did not receive a response to this appeal grievance.  (*Id.*).

In a letter to the Complaint Inspector dated June 28, 2022, Plaintiff complained about not receiving any responses to his grievances concerning the violations of his Eighth and Fourteenth Amendment rights.  (D.E. 38, p. 15).  Plaintiff indicated that he did not receive a response to this appeal grievance.  (*Id.*).

In his letter grievance submitted to Capt. Bullock dated July 12, 2022, Plaintiff complained about Nurse Castillo's decision to take him off his opioid addiction medication as there was never a court order directing this action.  (D.E. 38, p. 5).  Plaintiff indicated that he received no response to this grievance.  (*Id.*).

In a second letter grievance submitted to the grievance officer on July 12, 2022, Plaintiff further complained about being taken off his opioid addiction medication which he had been taking for over six months.  (D.E. 38, p. 6).  Plaintiff stated that he was the victim of nurse and doctor malpractice as the medication impacts the receptors in his brain and affects him psychologically.  (*Id.*).  Plaintiff indicated that this grievance went unanswered.  (*Id.* at 2).

In his letter grievance submitted to the grievance officer dated July 14, 2022, Plaintiff complained about the decision to take him off his opioid addiction medication.  (D.E. 38, p. 9).  According to this grievance, Nurse Castillo informed Plaintiff that probation had ordered him off his medication.  (*Id.*).  Plaintiff stated that he was also informed that his doctor was responsible for taking him off his medication.  (*Id.*).  Plaintiff indicated that he received no response to this grievance.  (*Id.*).

Plaintiff has submitted an Inmate Grievance form dated July 17, 2022, in which he sought to appeal to the sheriff about receiving no responses to his many grievances regarding his medication. (D.E. 38, p. 10). Plaintiff wrote that he was supposed to be on the medication Naltrexone until February or March of 2023, but that FNP Flynn and Nurse Castillo took this medication away from him. (*Id.*). Plaintiff indicated that he did not receive a response to this appeal grievance. (*Id.*).

### (5)   *Analysis*

Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs by taking away his medication to treat his serious opioid addiction disease. (D.E. 14). Plaintiff's allegations refer to actions taken by Defendants from May 4 through May 14, 2022 as well in July 2022. (*Id.* at 4, 6).

In their initial Motion to Dismiss, Defendants appear to acknowledge that Plaintiff successfully initiated a grievance complaint on or about May 9, 2022, with regard to the withholding of medication from Plaintiff around that time frame. (D.E. 27, p. 3). They argue that Plaintiff then failed to escalate and exhaust his available administrative remedies after submitting this initial grievance with respect to incidents occurring on May and July 2022. (*Id.* at 7-8). In response to Plaintiff's assertion that he filed initial grievances challenging Defendants' denial of opioid addiction medication in May and July of 2022, Defendants further argue:

> Plaintiff at best establishes that he completed the initial step of the two-step process set forth in the Handbook as to his two (2) grievances. However, he then failed to follow up with the second step of the grievance process for each of the complaints and pursue an appeal.

(D.E. 33, p. 5).

After the Court converted Defendants' motion to a summary judgment motion and directed the parties to submit additional evidence, Defendants advanced a different argument in their brief-response. (D.E. 39). They now contend that the administrative remedies set forth in the Handbook were readily available to Plaintiff but that "Plaintiff failed to follow the Inmate Grievance Process because he failed to provide [any of his initial grievances] to the lieutenant, sergeant, or captain." (*Id.* at 6). Defendants reiterate that, if Plaintiff did submit a grievance, he then "failed to escalate the alleged grievance as outlined in the Handbook." (*Id.*).

Plaintiff counters in his summary judgment motion and various responses that he received no response to any of his grievances or appeals and that such failure to respond rendered the administrative grievance process unavailable to him with respect to his claims. (D.E. 29, p. 4-6; D.E. 32, pp. 1-2; D.E. 34, p. 2). According to Plaintiff, the inmate grievance policy at the Bee County Jail required him to receive a response to his initial grievance before he could then seek to appeal. (D.E. 29, pp. 5-6).

Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon*, 596 F.3d at 270-72. Factual issues, as discussed below, exist to preclude the granting of summary judgment for either Plaintiff or Defendants on the issue of exhaustion. As an initial matter, Plaintiff sets forth in his amended complaint that he exhausted his administrative remedies with respect to his deliberate indifference claims of denial of access to the courts. (D.E.

14, p. 3). Plaintiff's amended complaint is verified and is competent summary judgment evidence. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).

The competent summary judgment evidence presented also shows that Plaintiff submitted a grievance directed to the Texas Commission on May 9, 2022. (D.R. 39-5, p. 2). Therein, Plaintiff complained about the failure of medical officials to provide him with his prescribed medication for opioid addition. (*Id.*). On one hand, Director Garcia indicates in his affidavit that Plaintiff submitted his formal May 9 grievance in a proper fashion under the Bee County Jail Inmate Handbook. (D.E. 27-1, p. 3).

On the other hand, Capt. Bullock states that Plaintiff, in directing his grievance to the Texas Commission on Jail Standards, failed to comply with Bee County's inmate grievance process as set forth in the Handbook. (D.E. 39-1, p. 3). The competent summary judgment evidence reflects that Capt. Bullock nevertheless acknowledged receiving Plaintiff's May 9 grievance on May 13, 2022. (D.E. 39-1, p. 4). It is undisputed that Capt. Bullock was the Grievance Officer at all relevant times and that his duties as a Grievance Officer included reviewing and investigating inmate grievances. (D.E. 39-1, p. 1; 39-2). At a minimum, a genuine issue of material fact exists as to whether Plaintiff complied with the Bee County Jail Inmate Handbook in submitting his May 9 grievance complaining about Defendants' decision to discontinue his opioid addition medication.

Director Garcia states in his affidavit, however, that Plaintiff never formally submitted any grievance complaints pertaining to his medical care received from July 2022 onward. (D.E. 27-1, p. 3). Plaintiff, however, has submitted as evidence numerous written

grievances dated June 12, 2022, June 15, 2022, June 16, 2022, July 12, 2022, July 14, 2022, and July 17, 2022.  (D.E. 38, pp. 4-10).  Plaintiff specifically indicated that he submitted his grievances dated July 12 and July 14, 2022 either specifically to Capt. Bullock or generally to the grievance officer, who just happens to be Capt. Bullock.  (D.E. 38, pp. 5-6, 9).  In his affidavit, Capt. Bullock avers that the Bell County grievance process required inmates to submit their grievances to either a jail sergeant, lieutenant, or captain.  (D.E. 39-1, p. 3). Plaintiff complained in these grievances about Defendants' actions in taking him off of the opioid addiction medication.  (D.E. 38, pp. 5-6, 9).

In considering whether Plaintiff submitted his various grievances regarding his July 2022 medical care, it is important to note that the undersigned directed Defendants to file "file information about how they record and maintain records of inmate grievances, including grievances filed electronically."  (D.E. 37, p. 4). Defendants have not presented any evidence to show that the Bee County Jail has a log or other record keeping system to document grievances submitted by inmates in paper form.  If such a log were accurately maintained, the lack of documentation of receipt of an inmate grievance would be strong summary judgment evidence that a paper grievance was never submitted by Plaintiff. Defendants otherwise submitted no reliable system of documenting and processing written grievances submitted by inmates.  If Bee County Jail does in fact maintain a system to document the receipt of inmate grievances received in paper form, that evidence should have been submitted to the Court.  The undersigned finds, therefore, that genuine issues of

fact exist as to whether Plaintiff submitted his initial grievances to a proper official under the Bee County Jail grievance policy regarding his medical care in July 2022.

Defendants further contend that, even assuming Plaintiff successfully filed initial grievances challenging their denial of opioid addiction medication in May and July of 2022, Plaintiff failed to pursue the second step of the grievance process by submitting appeals to the sheriff.  (D.E. 33, p. 5).  Plaintiff responds that the grievance process was rendered unavailable to him because he never received a response to his initial grievance giving him the chance to appeal with respect to his medication claims.  (D.E. 29, p. 4-6; D.E. 32, pp. 1-2; D.E. 34, p. 2).

In *Wilson*, *supra*, the Fifth Circuit explained that:

[Section 1997e's exhaustion] requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process.  Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.  Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301.

The *Wilson* court recognized that "under some circumstances, a prison's failure to respond to a grievance can result in the prisoner's administrative remedies being exhausted."  *Id.*  The relevant circumstances leading to exhaustion depend on the requirements set forth in the prison's governing grievance procedures.  *Id.*; *see also Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them.").  In

circumstances where "a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. *Cantwell*, 788 F.3d at 509 n.2 (citing *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), *overruled on other grounds as explained in Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012)).

Here, the grievance procedure set forth in the Bee County Jail Inmate Handbook provides that decisions on grievances will be issued to inmates and that inmates have the right to appeal the decision in writing.  (D.E. 39-4, p. 7).  Chapter 283.3 of the Bee County Grievance Plan provides in relevant part that: (1) the Grievance Board must investigate and issue a written response of the findings and actions taken within 15 days; and (2) an inmate may appeal the Grievance Board decision to the sheriff, whose decision is final.  (D.E. 39-2, pp. 1-2).

Unlike the grievance procedure policy at issue in *Wilson*, the Bee County Jail grievance policies do not contain a provision permitting an inmate to proceed to the next step should he not receive a response to his grievance within the requisite time. The applicable grievance procedure, therefore, provides inmates like Plaintiff no mechanism to take the next step through an appeal to the sheriff should he not receive a response to the initial grievance within the prescribed 15-day deadline.  It would be impermissible for this Court to follow Defendants' suggestion and "graft an additional requirement into the existing" Bee County Jail grievance policy mandating Plaintiff to proceed to the next step

when he has not received responses to his initial grievances.  *Deramus v. Claiborne Parish Detention Center*, No. 21-2566, 2022 WL 17840412, at *6 (W.D. La. Nov. 21, 2022), *recommendation adopted*, 2022 WL 17839009 (W.D. La. Dec. 21, 2022) (citing *Cantwell*, 788 F.3d at 509).  Without receiving responses to his initial grievances, genuine issues of fact exist as to whether the remaining the steps of the Bee County Jail grievance policy are "capable of use."  *See Ross*, 578 U.S.  at 642 ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of'"); *Deramus*, 2022 WL 17840412, at *5-6 (recognizing that, when an inmate does not receive a response to his Step One grievance and the applicable grievance policy does not afford a "next step" under these circumstances, "there is a genuine dispute concerning whether the policy is 'capable of use'").

In addition, despite never receiving a response to his initial grievances, Plaintiff has submitted into evidence several grievances in which he sought to appeal to the sheriff regarding the decisions to discontinue his medication in both May and July 2022.  (D.E. 38, pp. 4, 7-8, 10).  According to Plaintiff's evidentiary materials, he has not received a response to these appeal grievances.  (*Id.* at 2, 4, 7-8, 10).  Again, Defendants' failure to submit a reliable system of documenting written grievances and appeals would have been helpful in determining whether Plaintiff had in fact sought to appeal matters pertaining to the denial of  medication in May and July 2022.

When viewing the evidence presented to the Court in a light favorable to Plaintiff, Defendants have not established beyond peradventure all of the essential elements of

exhaustion.  Indeed, several genuine factual disputes exist as to whether Plaintiff exhausted all available administrative remedies before filing this action such that neither Defendants nor Plaintiff are entitled to summary judgment at this time.  Accordingly, the undersigned respectfully recommends that both Defendants' Motion to Dismiss (D.E. 27), treated as a summary judgment motion, and Plaintiff's Motion for Summary Judgment on the issue of exhaustion (D.E. 29) be denied.

### B.  Plaintiff's Motion for Summary Judgment On the Merits

Plaintiff further seeks summary judgment with respect to the merits of his Eighth Amendment claims, contending that no genuine issue of fact exists as to each element of his claims and that he is entitled to judgment as a matter of law.  (D.E. 29, p. 2). However, as the Fifth Circuit recognizes, disputes concerning exhaustion usually should be resolved before allowing the case to proceed to the merits.  *Dillon*, 596 F.3d at 273.  Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment (D.E. 27), to the extent he addresses the merits of his claims, be denied without prejudice to reassert after the exhaustion issue is resolved and the parties have been given an opportunity to conduct discovery on the merits of Plaintiff's Eighth Amendment claims.

### V.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss, treated as a motion for summary judgment (D.E. 27), be **DENIED in its entirety**.  The undersigned respectfully recommends further that Plaintiff's Motion for Summary Judgment (D.E. 29) be **DENIED** on the issue of exhaustion and

**DENIED** with respect to the merits of Plaintiff's Eighth Amendment claims **without prejudice** to reassert after the exhaustion issue is resolved. The undersigned notes that these motions were filed before the parties have conducted full discovery in this case. Accordingly, should the Court adopt this recommendation in full or in part, the parties may seek to file appropriate and more thorough dispositive motions once full discovery is completed.

      Respectfully submitted on June 7, 2023.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).